


UNITED STATES DISTRICT COURT
DISTRICT OF WYOMING

4:51 pm, 12/27/23

FILED
11/09/2023
2023-CV-0000229
Filed By: Donna Ratliff

James E. Fitzgerald (5-1469)
Michael J. Fitzgerald (7-5351)
The Fitzgerald Law Firm
2108 Warren Avenue
Cheyenne, WY 82001
307-634-4000 (Telephone)
307-635-2391 (Facsimile)
jim@fitzgeraldlaw.com
michael@fitzgeraldlaw.com

**Margaret Botkins**
**Clerk of Court**

WY Sweetwater County
District Court 3rd JD
Nov 09 2023 10:22AM
Unassigned
71369229

**FILED**

*Attorneys for Plaintiff*

| | | |
|---|---|---|
| **STATE OF WYOMING** | ) | **IN THE DISTRICT COURT** |
| | ) | **THIRD JUDICIAL DISTRICT** |
| **COUNTY OF SWEETWATER** | ) | |
| | ) | |
| ASHLEY HARRIS, as the Wrongful | ) | |
| Death Representative in the Matter | ) | |
| of the Wrongful Death of | ) | |
| TYELER HARRIS, deceased, | ) | |
| | ) | |
| Plaintiff, | ) | Civil Action No. _____ |
| | ) | |
| v. | ) | |
| | ) | |
| VAMAR INC, SAVIOL SAINT JEAN, REY | ) | |
| LOGISTICS, INC., OSVALDO HERRERA | ) | |
| PUPO, AGUSTIN SANCHEZ PAVON, SAIA | ) | |
| MOTOR FREIGHT LINE, LLC, and | ) | |
| ANDREW GIBBS, | ) | |
| | ) | |
| Defendants. | ) | |
| | ) | |

---

## COMPLAINT

---

Ashley Harris, the duly appointed Wrongful Death Representative in the Matter of the

Wrongful Death of Tyeler Harris, by and through undersigned counsel, brings this *Complaint*

against Vamar Inc. (hereinafter Vamar), Saviol Saint Jean, Rey Logistics, Inc. (hereinafter Rey

Logistics), Osvaldo Herrera Pupo, Agustin Sanchez Pavon, Saia Motor Freight Line, LLC

(hereinafter Saia), and Andrew Gibbs.    In support of this *Complaint*, Plaintiff alleges the following.

## I.    PARTIES, JURISDICTION, AND VENUE

1.    Ashley Harris is the widow of Tyeler Harris and is the duly-appointed Wrongful Death Representative of Tyeler Harris.

2.    Ashley Harris brings this action for wrongful death damages pursuant to Wyo. Stat. Ann. § 1-38-102 for pecuniary damages, exemplary damages, lost earnings and lost earning capacity, and damages for loss of future companionship, society, and comfort, due to the wrongful death of Tyeler Harris.

3.    Ashley Harris brings this action on behalf of those wrongful death beneficiaries entitled to recover damages for the wrongful death of Tyeler Harris under Wyoming law, including herself, the couple's three minor sons, and others as may be determined by the finder of fact.

4.    Defendant Vamar Inc. is a motor carrier incorporated in the State of Illinois with its principal place of business in Illinois.

5.    Defendant Saviol Saint Jean a/k/a Saviol Saint Gean was employed by an agent of, or otherwise retained, hired or authorized to drive by Vamar and was at all relevant times acting in the course and scope of his employment with, under the direction and control of, and/or in an agency relationship with Vamar.

6.    Defendant Rey Logistics, Inc. is a motor carrier incorporated in Pennsylvania with its principal place of business in Pennsylvania.

7.    Defendant Osvaldo Herrera Pupo was employed by, a contractor of, an agent of, or otherwise retained, hired or authorized to drive by Rey Logistics and was at all relevant times

acting in the course and scope of his employment with, under the direction and control of, and/or in an agency relationship with Rey Logistics.

8.      Agustin Sanchez Pavon is an individual.

9.      Defendant Saia Motor Freight Line, LLC is a motor carrier, a Louisiana Limited Liability Company, with its principal place of business in Georgia.

10.     Defendant Andrew Gibbs was employed by, a contractor of, an agent of, or otherwise retained, hired or authorized to drive by Saia and was at all relevant times acting in the course and scope of his employment with, under the direction and control of, and/or in an agency relationship with Saia.

11.     *Personal Jurisdiction.*  This Court has personal jurisdiction over all Defendants because they were a cause of the wrongful death of Tyeler Harris in Sweetwater County, Wyoming.

12.     *Subject Matter Jurisdiction.*  This Court has jurisdiction over the claims because the amounts in controversy as to each defendant for the wrongful death of Tyeler Harris greatly exceed fifty thousand dollars ($50,000.00), exclusive of interest and costs.

13.     *Venue.*  Venue is proper in this Court because the cause of action arose in Sweetwater County, Wyoming. *See* Wyo. Stat. Ann. § 1-5-109 ("An action for personal injuries or wrongful death may be brought in the county in which the cause of action arose . . . .").

14.     In compliance with Wyo. Stat. Ann. § 27-14-105(b), copies of this Complaint have been served, by certified mail, return receipt requested, on the Attorney General of the State of Wyoming and the Director of the Worker's Compensation Division, Department of Employment.

## II.    FACTS

15.    In the early morning hours of December 21, 2022, Pavon, Herrera Pupo, and Saint Jean were all driving westbound on I-80 in Sweetwater County, Wyoming.

16.    The roadway was icy.

17.    Pavon lost control of his pickup truck and utility trailer.

18.    The pickup and trailer jackknifed across I-80—the pickup itself rotated 180 degrees and was facing the wrong direction.

19.    At the same time, Herrera Pupo was operating Rey Logistics' semi-tractor and trailer westbound on I-80.

20.    Herrera Pupo ran into Pavon's jackknifed pickup and trailer.

21.    Pavon's pickup turned an additional 90 degrees after the impact and came to a rest in the median.

22.    Rey Logistics' tractor and trailer came to a rest in the right-hand lane.

23.    Pavon's trailer came to a rest in front of Rey Logistics' tractor.

24.    Gibbs, operating Saia's semi-tractor and trailer, then approached the scene of the Pavon/Rey Logistics crash and avoided the Pavon and Ray Logistics vehicles by entering the median but came to a stop immediately adjacent to the crash, creating a danger to Tyeler Harris.

25.    Tyeler Harris, an Emergency Medical Technician with Memorial Hospital of Carbon County Ambulance MS64, and another EMT, Tiffany Gruetzmacher, were dispatched to the scene of the Pavon/Rey Logistics crash.

26.    When Tyeler Harris and Tiffany Gruetzmacher arrived on scene, they parked the ambulance in the left-hand lane with the emergency lights activated.

27.    Tyeler Harris then got out of the ambulance to attend those involved in the crash.

4

28.    Saint Jean, operating Vamar's semi-tractor and trailer, next approached the scene of the Pavon/Rey Logistics crash in the right-hand lane at a dangerous, high rate of speed, that was too fast for the conditions.

29.    Saint Jean did not apprehend the situation in front of him.

30.    Saint Jean drove Vamar's tractor and trailer from the right-hand lane into the left-hand lane and then struck the parked ambulance and Tyeler Harris.

31.    Tyeler Harris was thrown into the landing gear of Saia's trailer.

32.    Tyeler Harris perished at the scene.

### III.    CLAIMS FOR RELIEF AGAINST VAMAR AND SAINT JEAN

### A.    NEGLIGENCE AND VICARIOUS LIABILITY – SAINT JEAN AND VAMAR

33.    Plaintiff realleges the allegations above and below and incorporates them by reference.

34.    Saint Jean, as a commercial motor vehicle operator, is subject to the laws, rules and regulations set forth in the Federal Motor Carrier Safety Act (hereinafter FMCSA).

35.    Saint Jean had a duty to use reasonable care while operating Vamar's commercial motor vehicle.

36.    Saint Jean had a duty to use extreme caution when operating Vamar's commercial motor vehicle in hazardous conditions that adversely affected traction.

37.    Saint Jean had a duty to have the commercial motor vehicle he was driving under reasonable control.

38.    Saint Jean had a duty to keep a proper lookout for other persons using the roadway.

39.     Saint Jean breached his duties when he failed to exercise extreme caution, failed to see what was open and apparent, failed to take notice of obvious dangers, and failed to stop before striking the parked ambulance and Tyeler Harris, among other acts and omissions.

40.     Saint Jean's breach of his duties was a direct and proximate cause of, contributed to, and played a substantial part in bringing about Tyeler Harris's wrongful death.

41.     As Saint Jean was acting within the course and scope of his employment and/or agency relationship with Vamar when he negligently caused Tyeler Harris's wrongful death and injuries, Vamar is vicariously liable for Saint Jean's negligence.

**B.    NEGLIGENCE – VAMAR**

42.     Plaintiff realleges the allegations above and below and incorporates them by reference.

43.     Vamar dispatched, or otherwise directed, Saint Jean to drive its semi-truck and trailer trough Wyoming.

44.     Vamar had a duty to use ordinary care in its operations.

45.     Vamar, as a motor carrier, is subject to the laws, rules and regulations set forth in the FMCSA.

46.     Vamar had a duty to the public to avoid knowingly placing its commercial truck drivers in hazardous or unsafe conditions which would pose a foreseeable risk of serious injury or death to others, including Tyeler Harris.

47.     Vamar knew or should have known that weather conditions along the I-80 corridor on the day of the accident were poor with accumulated ice on the road.

48.     Vamar breached its and/or their duty to use ordinary care.

49.     Vamar's breach of its and/or their duty to use ordinary care was a direct and proximate cause of, contributed to, and played a substantial part in bringing about Tyeler Harris's wrongful death.

## C.    NEGLIGENT HIRING AND RETENTION – VAMAR

50.     Plaintiff realleges the allegations above and below and incorporates them by reference.

51.     Vamar had a duty to exercise ordinary care when it hired and retained Saint Jean.

52.     Vamar breached its duty of ordinary care when it hired Saint Jean.

53.     Vamar breached its duty of ordinary care when it retained Saint Jean.

54.     Vamar's breaches of its duties of ordinary care when it hired and/or retained Saint Jean was a direct and proximate cause of, contributed to, and played a substantial part in bringing about Tyeler Harris's wrongful death.

## D.    NEGLIGENT TRAINING – VAMAR

55.     Plaintiff realleges the allegations above and below and incorporates them by reference.

56.     Vamar had a duty to exercise due care in designing a training program that would train its driver to use reasonable care while operating a commercial motor vehicle, to use extreme caution when operating a commercial motor vehicle in hazardous conditions that adversely affected traction, to have a commercial motor vehicle under reasonable control, and to keep a proper lookout for other persons using the roadway.

57.     Vamar breached its duty to train Saint Jean.

58.     Vamar's breach of its duty to train Saint Jean was a direct and proximate cause of, contributed to, and played a substantial part in bringing about Tyeler Harris' wrongful death.

7

### E.    NEGLIGENT ENTRUSTMENT – VAMAR

59.    Plaintiff realleges the allegations above and below and incorporates them by reference.

60.    Vamar supplied, directly or through a third person, the commercial motor vehicle Saint Jean was operating.

61.    Vamar knew or had reason to know that Saint Jean was likely to use the commercial motor vehicle in a manner involving an unreasonable risk of physical harm to others whom Vamar should expect to be endangered by its use.

62.    Vamar's negligent entrustment of the commercial motor vehicle to Saint Jean was a direct and proximate cause of, contributed to, and played a substantial part in bringing about Tyeler Harris's wrongful death.

### F.    NEGLIGENT SUPERVISION – VAMAR

63.    Plaintiff realleges the allegations above and below and incorporates them by reference.

64.    In the alternative, if Saint Jean was not acting within the course and scope of his employment and/or agency relationship with Vamar, then Plaintiff alleges that Vamar had a duty to control Saint Jean to prevent him from conducting himself so as to create an unreasonable risk of bodily harm to Tyeler Harris.

65.    Saint Jean was using a chattel of Vamar, namely the commercial motor vehicle leased to and/or owned by Vamar.

66.    Vamar knew, or had reason to know, that it had the ability to supervise and control Saint Jean.

67.     Vamar knew, or should have known, of the necessity and opportunity for exercising such supervision and control over Saint Jean.

68.     Vamar's breach of its duty to supervise and control Saint Jean was a direct and proximate cause of, contributed to, and played a substantial part in bringing about Tyeler Harris's wrongful death.

### G.     EXEMPLARY DAMAGES – SAINT JEAN AND VAMAR

69.     Plaintiff realleges the allegations above and below and incorporates them by reference.

70.     Under Wyoming law, "[w]henever the death of a person is caused by wrongful act, neglect or default," Wyo. Stat. Ann. § 1-38-101, "[t]he court or jury, as the case may be, may award such damages, pecuniary and exemplary, as shall be deemed fair and just." Wyo. Stat. Ann. § 1-38-101 (emphasis added).

71.     Saint Jean intentionally acted, or an intentionally failed to do an act, in reckless disregard of the consequences, and under such circumstances and conditions that a reasonable person would know, or have reason to know, that such conduct would, with a high degree of probability, result in harm to another.

72.     Saint Jean's willful and wanton misconduct was a direct and proximate cause of and played a substantial part in bringing about Tyeler Harris's wrongful death.

73.     Saint Jean was unfit to drive Vamar's semi-tractor and trailer, and Vamar was reckless in employing or retaining him to do so.

74.     Vamar, or a managerial agent of Vamar, authorized, approved of, or ratified the manner in which Saint Jean operated the semi-tractor and trailer.

75.    In the alternative, Saint Jean was a manager of Vamar and was acting within the course and scope of his employment when he was a direct and proximate cause of and played a substantial part in bringing about Tyeler Harris's wrongful death.

76.    As a result of the above, Vamar is liable for Saint Jean's willful and wanton misconduct and for its own willful and wanton misconduct.

## IV.    CLAIMS FOR RELIEF AGAINST REY LOGISTICS AND HERRERA PUPO

### A.    NEGLIGENCE AND VICARIOUS LIABILITY – HERRERA PUPO AND REY LOGISTICS

77.    Plaintiff realleges the allegations above and below and incorporates them by reference.

78.    Herrera Pupo, as a commercial motor vehicle operator, is subject to the laws, rules and regulations set forth in the FMCSA.

79.    Herrera Pupo had a duty to use reasonable care while operating a commercial motor vehicle.

80.    Herrera Pupo had a duty to use extreme caution when operating Rey Logistics' commercial motor vehicle in hazardous conditions that adversely affected traction.

81.    Herrera Pupo had a duty to have the commercial motor vehicle he was driving under reasonable control.

82.    Herrera Pupo had a duty to keep a proper lookout for other persons using the roadway.

83.    Herrera Pupo breached his duties when he failed to exercise extreme caution, failed to see what was open and apparent, failed to take notice of obvious dangers, and failed to stop before striking the jackknifed pickup truck and utility trailer, among other acts and omissions.

84.     Herrera Pupo's breach of his duties created a reasonably foreseeable increased risk of injury to Tyeler Harris.

85.     Herrera Pupo's breach of his duties was a direct and proximate cause of, contributed to, and played a substantial part in bringing about Tyeler Harris's wrongful death.

86.     As Herrera Pupo was acting within the course and scope of his employment and/or agency relationship with Rey Logistics, Rey Logistics is vicariously liable for its driver's negligence.

## B.    NEGLIGENCE – REY LOGISTICS

87.     Plaintiff realleges the allegations above and below and incorporates them by reference.

88.     Rey Logistics dispatched, or otherwise directed, Herrera Pupo to drive its semi-truck and trailer through Wyoming.

89.     Rey Logistics had a duty to use ordinary care in its operations.

90.     Rey Logistics, as a motor carrier, is subject to the laws, rules and regulations set forth in the FMCSA.

91.     Rey Logistics has a duty to the public to avoid knowingly placing its commercial truck drivers in hazardous or unsafe conditions which would pose a foreseeable risk of serious injury or death to others, including Tyeler Harris.

92.     Rey Logistics knew or should have known that weather conditions along the I-80 corridor on the day of the accident were poor with accumulated ice on the road.

93.     Rey Logistics breached its and/or their duty to use ordinary care.

94.     Rey Logistics' breach of its and/or their duty to use ordinary care was a direct and proximate cause of, contributed to, and played a substantial part in bringing about Tyeler Harris's wrongful death.

### C.    NEGLIGENT HIRING AND RETENTION – REY LOGISTICS

95.     Plaintiff realleges the allegations above and below and incorporates them by reference.

96.     Rey Logistics had a duty to exercise ordinary care when it hired and retained Herrera Pupo.

97.     Rey Logistics breached its duty of ordinary care when it hired Herrera Pupo.

98.     Rey Logistics breached its duty of ordinary care when it retained Herrera Pupo.

99.     Rey Logistics' breaches of its duties of ordinary care when it hired and/or retained Herrera Pupo was a direct and proximate cause of, contributed to, and played a substantial part in bringing about Tyeler Harris's wrongful death.

### D.    NEGLIGENT TRAINING – REY LOGISTICS

100.    Plaintiff realleges the allegations above and below and incorporates them by reference.

101.    Rey Logistics had a duty to exercise due care in designing a training program that would train its driver to use reasonable care while operating a commercial motor vehicle, to use extreme caution when operating a commercial motor vehicle in hazardous conditions that adversely affected traction, to have a commercial motor vehicle under reasonable control, and to keep a proper lookout for other persons using the roadway.

102.    Rey Logistics breached its duty to train Herrera Pupo.

103.   Rey Logistics' breach of its duty to train Herrera Pupo was a direct and proximate cause of, contributed to, and played a substantial part in bringing about Tyeler Harris' wrongful death.

### E.   NEGLIGENT ENTRUSTMENT – REY LOGISTICS

104.   Plaintiff realleges the allegations above and below and incorporates them by reference.

105.   Rey Logistics supplied, directly or through a third person, the commercial motor vehicle Herrera Pupo was operating.

106.   Rey Logistics knew or had reason to know that Herrera Pupo was likely to use the commercial motor vehicle in a manner involving an unreasonable risk of physical harm to others whom Rey Logistics should expect to be endangered by its use.

107.   Rey Logistics' negligent entrustment of the commercial motor vehicle to Herrera Pupo was a direct and proximate cause of, contributed to, and played a substantial part in bringing about Tyeler Harris's wrongful death.

### F.   NEGLIGENT SUPERVISION – REY LOGISTICS

108.   Plaintiff realleges the allegations above and below and incorporates them by reference.

109.   In the alternative, if Herrera Pupo was not acting within the course and scope of his employment and/or agency relationship with Rey Logistics, then Plaintiff alleges that Rey Logistics had a duty to control Herrera Pupo to prevent him from conducting himself so as to create an unreasonable risk of bodily harm to Tyeler Harris.

110.   Herrera Pupo was using a chattel of Rey Logistics, namely the commercial motor vehicle leased to and/or owned by Rey Logistics.

111.    Rey Logistics knew, or had reason to know, that it had the ability to supervise and control Herrera Pupo.

112.    Rey Logistics knew, or should have known, of the necessity and opportunity for exercising such supervision and control over Herrera Pupo.

113.    Rey Logistics' breach of its duty to supervise and control Herrera Pupo was a direct and proximate cause of, contributed to, and played a substantial part in bringing about Tyeler Harris's wrongful death.

## V.    CLAIM FOR RELIEF AGAINST PAVON

114.    Plaintiff realleges the allegations above and below and incorporates them by reference.

115.    Pavon had a duty to use reasonable care while operating a motor vehicle.

116.    Pavon had a duty to have the motor vehicle he was driving under reasonable control.

117.    Pavon breached his duties when he lost control of his pickup truck and utility trailer, among other acts and omissions.

118.    Pavon's breach of his duties created a reasonably foreseeable increased risk of injury to Tyeler Harris.

119.    Pavon's breach of his duties was a direct and proximate cause of, contributed to, and played a substantial part in bringing about Tyeler Harris's wrongful death.

## VI.    CLAIMS FOR RELIEF AGAINST SAIA AND GIBBS

### A.    NEGLIGENCE AND VICARIOUS LIABILITY – GIBBS AND SAIA

120.    Plaintiff realleges the allegations above and below and incorporates them by reference.

121.    Gibbs, as a commercial motor vehicle operator, is subject to the laws, rules and regulations set forth in the FMCSA.

122.    Gibbs had a duty to use reasonable care while operating a commercial motor vehicle.

123.    Gibbs had a duty to use extreme caution when operating Saia's commercial motor vehicle in hazardous conditions that adversely affected traction.

124.    Gibbs had a duty to have the commercial motor vehicle he was driving under reasonable control.

125.    Gibbs had a duty to keep a proper lookout for other persons using the roadway.

126.    Gibbs breached his duties when he failed to exercise extreme caution, failed to see what was open and apparent, failed to take notice of obvious dangers, and failed to stop before entering the median, among other acts and omissions.

127.    Gibbs' breach of his duties created a reasonably foreseeable increased risk of injury to Tyeler Harris.

128.    Gibbs' breach of his duties was a direct and proximate cause of, contributed to, and played a substantial part in bringing about Tyeler Harris's wrongful death.

129.    As Gibbs was acting within the course and scope of his employment and/or agency relationship with Saia, Saia is vicariously liable its driver's negligence.

### B.    NEGLIGENCE – SAIA

130.    Plaintiff realleges the allegations above and below and incorporates them by reference.

131.    Saia dispatched, or otherwise directed, Gibbs to drive its semi-truck and trailer through Wyoming.

132.    Saia had a duty to use ordinary care in its operations.

133.    Saia, as a motor carrier, is subject to the laws, rules and regulations set forth in the FMCSA.

134.    Saia has a duty to the public to avoid knowingly placing its commercial truck drivers in hazardous or unsafe conditions which would pose a foreseeable risk of serious injury or death to others, including Tyeler Harris.

135.    Saia knew or should have known that weather conditions along the I-80 corridor on the day of the accident were poor with accumulated ice on the road.

136.    Saia breached its and/or their duty to use ordinary care.

137.    Saia's breach of its and/or their duty to use ordinary care was a direct and proximate cause of, contributed to, and played a substantial part in bringing about Tyeler Harris's wrongful death.

## C.    NEGLIGENT HIRING AND RETENTION – SAIA

138.    Plaintiff realleges the allegations above and below and incorporates them by reference.

139.    Saia had a duty to exercise ordinary care when it hired and retained Gibbs.

140.    Saia breached its duty of ordinary care when it hired Gibbs.

141.    Saia breached its duty of ordinary care when it retained Gibbs.

142.    Saia's breaches of its duties of ordinary care when it hired and/or retained Gibbs was a direct and proximate cause of, contributed to, and played a substantial part in bringing about Tyeler Harris's wrongful death.

### D.    NEGLIGENT TRAINING – SAIA

143.    Plaintiff realleges the allegations above and below and incorporates them by reference.

144.    Saia had a duty to exercise due care in designing a training program that would train its driver to use reasonable care while operating a commercial motor vehicle, to use extreme caution when operating a commercial motor vehicle in hazardous conditions that adversely affected traction, to have a commercial motor vehicle under reasonable control, and to keep a proper lookout for other persons using the roadway.

145.    Saia breached its duty to train Gibbs.

146.    Saia's breach of its duty to train Gibbs was a direct and proximate cause of, contributed to, and played a substantial part in bringing about Tyeler Harris' wrongful death.

### E.    NEGLIGENT ENTRUSTMENT – SAIA

147.    Plaintiff realleges the allegations above and below and incorporates them by reference.

148.    Saia supplied, directly or through a third person, the commercial motor vehicle Gibbs was operating.

149.    Saia knew or had reason to know that Gibbs was likely to use the commercial motor vehicle in a manner involving an unreasonable risk of physical harm to others whom Saia should expect to be endangered by its use.

150.    Saia's negligent entrustment of the commercial motor vehicle to Gibbs was a direct and proximate cause of, contributed to, and played a substantial part in bringing about Tyeler Harris's wrongful death.

### F.    NEGLIGENT SUPERVISION – SAIA

151.    Plaintiff realleges the allegations above and below and incorporates them by reference.

152.    In the alternative, if Gibbs was not acting within the course and scope of his employment and/or agency relationship with Saia, then Plaintiff alleges that Saia had a duty to control Gibbs to prevent him from conducting himself so as to create an unreasonable risk of bodily harm to Tyeler Harris.

153.    Gibbs was using a chattel of Saia, namely the commercial motor vehicle leased to and/or owned by Saia.

154.    Saia knew, or had reason to know, that it had the ability to supervise and control Gibbs.

155.    Saia knew, or should have known, of the necessity and opportunity for exercising such supervision and control over Gibbs.

156.    Saia's breach of its duty to supervise and control Gibbs was a direct and proximate cause of, contributed to, and played a substantial part in bringing about Tyeler Harris's wrongful death.

## VII.    DAMAGES

157.    Plaintiff realleges the allegations above and below and incorporate them by reference.

158.    As a result of the defendants' conduct, Ashley Harris and the other wrongful death beneficiaries are entitled to recover damages for the wrongful death Tyeler Harris including pecuniary damages, lost earnings, and lost probable future companionship, society, and comfort.

159.    As a result of Saint Jean and Vamar's willful and wanton misconduct, Ashley Harris and the other wrongful death beneficiaries are entitled to recover exemplary damages from Saint Jean and Vamar.

WHEREFORE, Plaintiff claims, for those entitled to recover damages for the wrongful death of Tyeler Harris, compensatory damages from each defendant in an amount to be determined at trial, exemplary damages from Saint Jean and Vamar, costs, and such further relief as the Court deems just.

Dated November 9, 2023

_____ /s/ *James E. Fitzgerald* _____
James E. Fitzgerald (5-1469)
Michael J. Fitzgerald (7-5351)
The Fitzgerald Law Firm
2108 Warren Avenue
Cheyenne, WY 82001
307-634-4000 (Telephone)
307-635-2391 (Facsimile)
jim@fitzgeraldlaw.com
michael@fitzgeraldlaw.com